2pw279
135 372

JOHN McLANAHAN and MICHAEL McLANAHAN, sur-
viving executors of JOHN McLANAHAN, deceased, with
notice to terre tenants *against* JOHN WYANT administrator
of ELIZABETH McLANAHAN.

### IN ERROR.

A, devised his lands charged with certain legacies to B, C, and D, who made parti-
tion of the same among themselves. *Held:* that the legacies which before the
partition were charged on the whole land ceased to be a lien on the respective
parts for more than the proportion allotted to each of the devisees.

The fund charged is the principal, the lien is the incident and follows the principal
in its division precisely in the proportion that the whole bears to any part—such
proportion being chargeable after the partition only on each allottment.

Therefore where after partition the land of B was levied upon and sold on a
judgment against him, the legatees can come in upon the fund in the hands of the
sheriff only in the proportion of the land sold to the whole amount of the land
charged with the legacies.

Where one of the allotments proves inadequate to pay such proportion, it might, un-
der particular circumstances, form an exception to the general rule.

WRIT of error to the Court of Common Pleas of Franklin
county.

This was an action brought in the Court below by the admin-
istrator of *Elizabeth McLanahan*, against the surviving execu-
tors of *John McLanahan*, with notice to terre tenants, to re-
cover a legacy under the will of *John McLanahan*, her father.
By this will it was devised among other things, as follows, to
wit:

"To my sons John, Thomas and Michael, I give and bequeath
all my real and personal estate; with all the appurtenances thereto
belonging, excepting such part as hereafter reserved for the re-
maining legatees, subjecting my land nevertheless to be liable to
the several payments hereafter mentioned." He afterwards de-
vises to his daughters *Jane, Rebecca* and *Elizabeth*, £250 each,
together with some articles of furniture.

In 1809 a writ of partition was sued out, by *Thomas*, one of
the devisees, and after the return thereof, in the year 1811, the
parties thereto, *Thomas, John*, and *Michael*, submitted the mat-
ters therein to certain referees mutually chosen, who divided the
lands so devised, amongst the said *Thomas, John*, and *Michael*,
which partition was confirmed by the Court and acquiesced in by
the parties.

In April, 1824, two hundred acres of the share of *Thomas*,

(McLanahan *v.* McLanahan.)

were levied upon by the sheriff of Franklin county, at the suit of *James Riddle, Esq.*, for the use of *A.* and *J. Colhoun*, v. *John Flanagan, administrator of Thomas McLanahan*, and sold.

(The foregoing statement of facts embraces all that is necessary to understand the points raised for the decision of the Court in this case; a fuller account however, together with a copy of the whole will and all the pleadings, will be found in *McLanahan* v. *McLanahan*, 1 *Penn. Rep.* 98, where different points were presented.)

The question here was whether the whole of the legacies charged by the will of *John McLanahan* upon the lands devised to *Thomas, John*, and *Michael*, should be taken out of the proceeds of the two hundred acres of *Thomas'* share, which had been assigned to him in the partition, and sold by the Sheriff at the suit of *Riddle*, for the use of *Colhoun:* or whether *Thomas'* part was liable for more than one third of the legacies, which were a lien on all the lands devised.

The Court below charged the jury that as soon as the sheriff's deed was acknowledged, the land sold was discharged from the incumbrance of the legacies, and the sheriff became liable to pay them in the proportion, which the land sold bears to the whole amount of the land devised by *John McLanahan* to his three sons charged with them.

*Dunlop* for the plaintiffs in error.

Judicial sales of the land divest all liens whether general or specific, *McLanahan* v. *McLanahan*, 1 *Penn. Rep.* 96.

Each part is liable for the whole without apportionment, and where a sale of a *part* is made, it operates to discharge the *whole* land from liens.

*Chambers* for defendant in error.

The testator devised his lands to his three sons, charged with pecuniary legacies; they divided them into three parts, which were a common fund to pay the legacies charged on them—the charge by law was equal and one part ought not to bear more than its proportion. It is a doctrine well established that where land is charged with a burden, the charge ought to be equal, and one part should not bear more than its proportion, and equity will preserve this equality by compelling the owner of each part to a just contribution. *Harbert's case*, 3 *Co.* 14. *Harris* v. *Ingledew*, 5 *P. Wms.* 98. *Stevens* v. *Cooper*, 1 *John. Ch. Rep.* 430. *Cheesebrough* v. *Millard*, *ib.* 409. No decision or opinion can be produced to support the position of the plaintiff in error that all the legacies should be paid out of the fund raised by

(McLanahan *v.* McLanahan.)

the sheriff from the sale of *Thomas'* land, and that the land of the other devisees is thereby discharged. Equity so far from compelling a creditor to resort to one part of an estate charged with a common burden, will restrain him from levying the whole of his claim on one part, so far as it is in the power of a Court of equity to interfere. The grantee of rent has been *restrained* from levying the whole rent upon one of the purchasers. 1 *Eq. Ca. ab.* 33. 1 *Maddock's chancery*, 193. Creditors have been compelled to wait until the proportions of devisees to pay a charge on their estates was ascertained. *Harris* v. *Ingledew*, 3 *P. Wms.* 98. The plaintiffs' omission to receive their legacy out of moneys raised by sales could not operate further to their prejudice than if they had released the land of *Thomas*. A release of part of the estate charged would have operated to the discharge of a proportional part of the debt. *Stevens* v. *Cooper*, 1 *John. Ch. Rep.* 430. 1 *Caine's cases*, 73. The judicial sales by the sheriff and administrators was not *per se* a payment—they were only a means of payment which plaintiffs might waive. *Bank of Penn.* v. *Winger*, 1 *Rawle*, 303. It was not for the other debtors to object to such waiver at least further than to the discharge of one third, being the equitable proportion of that part of the common fund. As a fund or means of payment, plaintiffs are not bound to pursue or retain except in favour of a surety. The defendants were not sureties, but joint debtors in representing the fund devised and charged. If the plaintiffs had claimed and recovered out of the assets of the estate of *Thomas McLanahan*, deceased, all their claim, the administrators might have sustained an action against the defendants below for contribution. The defendants are not injured. The Court cannot intend that they have paid to the other legatees more than their proportions; if they had, our broad system of equitable defence might admit of an inquiry into it, and protect the defendants by a proper adjustment.

The opinion of the Court was delivered by

Ross, J.—The question presented to the Court is, shall the proceeds of the sheriff's sale of the share of *Thomas*, be applied to discharge the whole, or one third of the legacies, which were made a lien on all the lands devised to *Thomas*, *John* and *Michael?* In reason, and common sense, if *Thomas* received but one third of the land, both in quantity and quality, he should only be liable for one third of the legacies. To make his share liable for more would be contrary to the evident intention of the testator, as is manifest from his having made all his land devised to his sons, equally liable. If it be clear, that he intended to subject all his land equally to the payment of the legacy in ques-

36

(McLanahan *v.* McLanahan.)

tion, by what rule of law is the Court authorized to say that the share of *Thomas* shall be alone answerable? Certainly by no principle to be found in the books of reports, or elementary writers. The making partition could not render him liable, because it was what the law would have compelled him to do at the instance of either of the tenants in common. The rights of a party shall not be affected by doing that voluntarily, which the law would have forced him to do. Infants or *feme coverts* cannot avoid an act done during infancy or coverture, which the *law*, if they had refused, would have compelled them to do. 3 *Burr*, 1801. *Thomas* then so far as appears, did nothing to render his share exclusively liable for the whole amount of the legacy. But it is urged that by modern decisions of this Court, a sale by the sheriff extinguishes all liens, and especially the lien of legacies. Without inquiring how far that position is sanctioned by the cases relied on, I would merely remark, that so far as the decisions have gone on that subject, I feel myself bound to submit. But certainly it h s not yet been decided, that a legacy charged on land, and pa, able, with interest annually, in 10 years, or at the death of *A*, is extinguished by a sale of the land on a judgment against a d isee—nor that a judgment which on the face of the record is pay ble in ten years, is discharged by a sheriff's sale. In the f me case. the legatee would be obliged to relinquish the lien upon which the donor had charged the legacy, as a od ont security; and in the latter, the judgment cr lose his lien although the judgment was only in ten years. Would not this Court, by such a doing be doing that which the legislature is prohibited from doing? It may indeed be well questioned, how far a Court would be authorized to make a decision in violation of a contract, by compelling the judgment creditor to receive his money ten years before his contract bound him to receive it; and which contract, the defendant, at the time of making it, being clear of incumbrances, had an unquestionable right to enter into. So also in the case of dower adjudged by the Orphans' Court, to remain a lien on lands taken at the appraisement, the same difficulties would exist. Many other cases might be suggested of a similar character, which, I apprehend, are not yet decided, and which may hereafter furnish exceptions to the rule, as broad as the rule itself. These questions have been adverted to, as indicating at present, my individual impressions, and because it has been contended in this case, that the Court are bound to carry the principles, which it is said, have been decided, through all the varying cases which may arise on this branch of the law.

The question under consideration does not come within either the letter or spirit of any of the decisions referred to. By the partition, the proportion of *Thomas*' liability attached exclu-

sively on his share; and was discharged from any proportion of the other two thirds, which attached on the respective shares, of *John* and *Michael.* If this position be true (and it is believed to be perfectly consistent with the justice and equity of the case, as well as the law,) each of the three parts, after the partition, became separately liable for one third of the legacies, and no more. This is fairly deducible from the case of *Jackson* v. *Pearce*, in 10 *Johns. Rep.* 414, 417. In that case, the Court decided, that "where a mortgage is given of an undivided part or share in a large tract of land, and on partition, the right or share of the mortgagor, is allotted in severalty, the mortgage will be considered as attached to the part so assigned, as the share of the mortgagor, and will cover his whole interest therein." See *Morris* v. *McConnachy's executors*, 1 *Yeates*, 189. To my mind the converse of the proposition is necessarily involved in this decision—that where land is charged with a burden, each part ought to bear no more than its due proportion of the charge; and that equity will compel each party to a just contribution, as decided in *Stevens* v. *Cooper.* 1 *Johns. Chan. Rep.* 425. The Court and the bar seemed to consider the question in the case of *Jackson* v. *Pearce*, too well settled to be controverted by any course of reasoning. The case of *Stevens* v. *Cooper*, in 1 *Johns. Ch. Rep.*, and the authorities there cited, taken in connection with the case of *Jackson* v. *Pearce*, clearly proves that, each part or share, if equal in value, is only liable to be charged with one third of the legacies, with which the whole estate was encumbered by the devise. And I think it may be fairly inferred from the decision in *Stevens* v. *Cooper*, that chancery would prohibit any attempt to recover more than a due proportion of the legacies. This inference is corroborated by the case of. *Hays* v. *Ward*, 4 *John. C. Rep.* 134, where a creditor took from the maker of a promissory note, indorsed by plaintiff, a bond and mortgage, and instead of resorting to the mortgage, sued the plaintiff, and the indorser, the Court granted an injunction to stay the suit at law, until the creditor had pursued his remedy on the mortgage. It is true, the case was decided on the rights of principal and surety, whereas the case under review chiefly rests on the principles of law relative to apportionment. Like the case of principal and surety it might however, under certain circumstances, involve the doctrine of contribution and substitution. The same principles, which I have abstracted from the cases that have been cited, will be found on examination to exist at common law. They are so consonant to justice and equity, as we as to the nature and fitness of things, that any code of laws would be defective without such provisions. If this question be tested by the common law

doctrine of apportionment, we shall find the same principles governing and controlling the rights of the parties. Whether the question be in relation to the apportionment of a rent, condition, or partition between parceners, or tenants in common, a reference to a few of the authorities on this subject, will, I think, be sufficient. Apportionment, says *Lord Coke*, signifieth a division or partition of a rent, common, &c. or making it into parts. *Co. Lit.* 147, *b.* The definition is imperfect. Apportionment, it is said, frequently denotes not division, but distribution, and in its ordinary technical sense, the distribution of one subject *in proportion to another previously distributed.* A well digested reference to the authorities on the apportionment of rent will be found in a note to the case of *ex parte Smyth* in 1 *Swanston's Rep.* 338. If a lessor granteth part of the reversion to a stranger, the rent shall be apportioned, for the rent is incident to the reversion. So if a tenant by Knight service by his last will and testament in writing devise the reversion of two parts of the land, the devisee shall have two parts of the rent. *Co. Lit.* 148, *a. n.* 8. *and* §222—3—4:—Again, if co-parceners make partition, at full age, and unmarried, and of sane *memorie,* of lands in fee simple, it is good and *firme* forever, albeit the values be unequal. *Co. Lit.* 166, *a.* So a partition of lands entailed between parceners, if it be equal at the time of partition, shall bind the issues in tail forever, albeit the one do aliene her part. *Co. Lit.* 173, *a.*

Each allotment by the partition and operation of law, became the exclusive property of him, to whom it was assigned: and the land, on which the legacies were charged, was divided into three parts. So that the legacy, which before the partition, had been charged on the whole land, ceased to be a lien on the respective parts for more than the proportion allotted to each one of the devisees. The fund charged was the principal, the lien was the incident, and followed the principal in its division in precisely the same proportion that the whole bore to any part. Such proportion being separately chargeable, after the partition, only on each allotment, unless indeed any one of the allotments are found inadequate to pay such proportion. It might then perhaps, under particular circumstances, form an exception to the general rule.

From what has been said, it follows, that there was no error in the charge of the Court, and that the judgment be must affirmed.

Judgment affirmed.